IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.        ) | Criminal No. 17-335 |
| ) | |
| DEVAN ABRAMS ) | |
| AZAD KHIZGILOV ) | |
| ROMAN SHAULOV ) | |

RESPONSE TO SENTENCING MEMORANDA

For years these notorious defendants enriched themselves by leading a massive and sophisticated fraud scheme that facilitated the black-market importation and sale of tens of millions of dollars of dangerous and addictive prescription medications and controlled substances. Committing fraud was their full-time job. They manipulated friends and even family members to serve as owners of front companies, they had a cadre of employees who they supervised and trained to commit fraud, and they created and executed an erudite scheme that allowed them, for years, to deceive some of the most sophisticated financial institutions in the world. Their crimes are serious and they call for serious sentences.

A. COURT'S SENTENCES OF SIMILARLY SITUATED DEFENDANTS

These sentences are important sentencings because, if the government can deter the use of credit cards to make on-line purchases of prescription medication and controlled substances, that will go a long way toward protecting our citizenry from obtaining these dangerous substances through the black market. The Court recognized that point when it sentenced Garri Shihman, the former business partner of Abrams and Khizgilov, to a term of imprisonment of 45 months (Criminal No. 17-339, ECF No. 58). There is no appreciable difference between these defendants and Shihman. In fact, their advisory Sentencing Guideline ranges of 51-63 months are identical. Shihman made many of the same arguments for a variance that these defendants made, and while

the Court granted a variance is Shihman, the Court still imposed a significant period of incarceration – 45 months. The Court also imposed a thirty-two-month term of imprisonment for Gennady Nudelman (Criminal No. 18-119, ECF No. 54), who was much less culpable than these defendants and who also made many of the same arguments for a downward variance (Criminal No. 18-119, ECF No. 49). Again, the Court varied slightly from Nudelman's advisory Sentencing Guideline range of 41-51 months to a term of imprisonment of 32 months. By imposing significant terms of imprisonment for Shihman and Nudelman, the Court recognized the importance of these sentences. The sentencings of these defendants are even more important than the sentencing of Shihman and Nudelman because they involve three of the most notorious individuals involved in this underground and seedy industry.

B. CONTROLLED SUBSTANCES

The defendants contend that they did not involve their business in facilitating the black-market sale of controlled substances, but the reality was that this fraudulent enterprise was heavily involved in the sale of addictive and dangerous controlled substances, as well as all sorts of dangerous "black box" prescription medications. As set forth in the Presentence Investigation Reports, the defendants used front companies to facilitate sales, and records developed during the investigation related to just two of these from companies – A&R Shoes and GEB Enterprises – demonstrate that they were associated with approximately 3,200 transactions involving controlled substances. (See Exhibits 1 and 2).[1]

The controlled substances were typically steroids, tramadol, or modafinil, which are either Schedule III or Schedule IV controlled substances. The defendants' arguments are belied by the

---

[1] The defendants used about seventy front companies, but because limitations in the data, the total amount of the controlled substances sold is unknown. Attached as Exhibit 3 is a chart containing additional information related to the drugs contained in Exhibits 1 and 2

incontrovertible evidence establishing that they regularly facilitated the sales of large quantities of controlled substances. Greed motivated them, and whether the substances were controlled or should have contained a black box warning did not deter them.[2]

### C. THE LOSS AMOUNT

Equally specious is the argument that the loss amount understates the seriousness of the defendants' criminal conduct. First, the defendants agreed to the loss amount in their plea agreements. Second, by the government's conservative estimation, these defendants processed more than $50 million in fraudulent credit card transactions. Third, the defendants' crimes are unique and the loss amount does not really capture the breadth of the harm they caused, much of which cannot be measured.

The crimes are unique because a number of companies and individuals could consider themselves victims of the defendants' scam. The primary targets of the deception were the companies that authorized the front companies to process credit card transactions. They faced fines, chargebacks and all sorts of potential financial loss because of the defendant's fraudulent conduct. Secondary targets were the dozens of individuals who the defendants deceived into acting as owners of front companies. According to government interviews of these individuals, most of them had no idea that the defendants were using their identification information to commit fraud.[3]

The primary harm, however, was to the consumers. We will never know how many individuals got hooked on products like modafinil, were impacted because of steroid abuse, or became ill or even died because they took a drug that were supposed have a black-box warning and only taken under the care of physician. The defendants' scheme was too vast for the

---

[2] As reflected in employee interviews (Exhibits 4-9), the defendants, just as the do with this Court, claimed to their employees that they were trying to avoid selling controlled substances.
[3] See Exhibits 10-19.

government is track or measure the true impact of the defendants' duplicity. The defendants' callous disregard of the true impact of their crimes reflects their lack of remorse. They did not and still do not really care how many people they hurt or the true impact of their years of criminal activity.

WHEREFORE, for the reasons set forth above, the government respectfully requests that the Court deny the defendants' motions for variance and impose a sentence within the advisory Sentencing Guideline range.

        Respectfully submitted,

        STEPHEN R. KAUFMAN
        Acting United States Attorney

By:    /s/ Brendan T. Conway
        BRENDAN T. CONWAY
        Assistant U.S. Attorney
        PA I.D. No. 78726